UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                          Criminal Case No. 07-20355

v.

                                          HON. MARIANNE O. BATTANI

DAWN HANNA,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Before the Court is Defendant Dawn Hanna's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 148). Defendant claims she was denied her Sixth Amendment right to effective assistance of counsel at sentencing. According to Hanna, her sentence was the result of the erroneous legal advice of Trial Counsel. Hanna identifies the deficiency:

> [Trial Counsel] took the position that she should be sentenced under subsection (a)(2) of the money laundering guideline instead of subsection (a)(1). Critically, by taking that position trial counsel exposed her to the specific offense characteristic set forth in subsection (b)(1) of §2S1.1. That subsection provides for a six point enhancement to the defendant's base offense level if the defendant dealt in laundered funds representing the proceeds of an offense involving national security. Under the express language of 2S1.1(b)(1), that enhancement could be invoked only if subsection (a)(2) (the provision advocated by trial counsel) and not subsection (a)(1) (the provision advocated by the government) applied.

(Doc. No. 148, Def.'s Mot. at 5-6).

Consequently, Defendant seeks relief from her sentence. Specifically, she asks the Court to set this matter for resentencing. For the reasons discussed below, the Court **DENIES** the motion.

## I. BACKGROUND

In 2007, Hanna was indicted in a multi-count indictment. The charges against her included the following:

> Count 1--conspiracy in violation of 18 U.S.C. § 371, 50 U.S.C. § 1705(b) relating to the export of telecommunications equipment to Iraq;
>
> Counts 2 through 7–dealing in property intended for exportation to Iraq without prior authorization form the Secretary of the Treasury in violation of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705(b);
>
> Count 8–conspiracy to launder money in violation of 18 U.S.C. § 1956(h);
>
> Count 9–forfeiture; and
>
> Count 10–making a materially false statement to a customs agent in violation of 18 U.S.C. § 1001(a)(2).

(Doc. No. 3)

After a four week trial, the jury convicted Hanna of all but one substantive IEEPA count--Count 6. The Government and Hanna disputed that applicable guidelines calculation. They agreed that the applicable section of the Guidelines for determining her base offense level was §2S1.1, which governs the laundering of monetary instruments. It reads in relevant part:

> (a) Base Offense Level:
>
> > (1) The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offence (or would be accountable for the underlying

>offense under (a)(1)(A) of §1B1.3 (Relevant Conduct)); and (B) the offense level for that offense can be determined; or
>
>(2) 8 plus the number of offense levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the value of the laundered funds, otherwise,
>
>(b) Specific Offense Characteristics
>
>>(1) if (A) subsection (a)(2) applies; and (B) the defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote (i) an offense involving the manufacture, importation, or distribution of a controlled substance or a listed chemical; (ii) a crime of violence; or (iii) an offense involving firearms, explosives, national security, or the sexual exploitation of a minor, increase by 6 levels.

U.S.S.G § 2S1.1.

The parties disagreed as to which subsection governed, (a)(1) or (a)(2). The Government maintained that Hanna should be sentenced under subsection (a)(1), which required reference to the statutory index in Appendix A to the Sentencing Guidelines. The Appendix includes two possible relevant provisions: § 2M5.3 for providing material support or resources to a designated foreign terrorist organization, or § 2M5.1 for evasion of export controls. Section 2M5.3 is cross referenced in Appendix A for § 1705 of IEEPA, which was cited in the Indictment and set forth the penalties for violating an embargo. In addition, although not cited in the Indictment, § 1701 of the IEEPA contained the actual substantive embargo against Iraq that Hanna violated. Both called for a base offense level of 26.

In contrast, Trial Counsel argued that the underlying offense level could not be determined under subsection (a)(1), and although he acknowledged that the cross-references in Appendix A were mandatory, he asserted that the Court should not apply

either of the guidelines identified in that Appendix for the violation of the embargo. (Doc. No. 148, Ex. B at 14-15).  He argued that Hanna in no way provided material support to terrorism, see § 2M5.3, and that the alternative provision, § 52M5.1 was inapplicable because that section is linked to 50 U.S.C. § 1701, which was not cited in the Indictment.

After raising these shortcomings, Trial Counsel urged the Court to sentence Hanna under subsection (a)(2) of the money laundering guideline.  He acknowledged that under that subsection, Hanna was exposed to the specific offense characteristic that required a six-point enhancement to the base offense where the defendant dealt in laundered funds representing the proceeds of an offense involving national security. See § 2S1.1(b)(1).  Nevertheless, Trial Counsel opposed the six-point enhancement, arguing to the Court that the facts at trial did not support a finding that the country's national security was ever threatened as a result of Hanna's conduct.  Trial Counsel's calculation under subsection (a)(2) reduced the guidelines range from the 97 to 121 months advocated by the Government under subsection (a)(1) to 78 to 97 months.

The Court adopted in part Trial Counsel's argument.  Specifically, the Court agreed that subsection(a)(2) applied and found Hanna's base offense level was 26 based on the $3.3 million in laundered funds.  (Doc. No. 148, Ex. B at 18-19, 24).  It added a two-point enhancement for her conviction under 18 U.S.C. § 1956; a two-point enhancement for obstruction of justice; and, contrary to Trial Counsel's position,  the six-point national security enhancement under §2S1.1(b)(1).  The Court found that the guidelines range for Hanna was 188 to 235 months.

At the sentencing hearing, the Court reviewed the sentencing factors and sentenced Hanna to a prison term of seventy-two months. The sentence was well below the guidelines range.

Hanna subsequently appealed the national security enhancement. The Sixth Circuit Court of Appeals affirmed the sentence, but found that this Court erred in its sentencing calculation. The reasoning follows:

> Hanna's conduct clearly qualifies for the enhanced Base Offense Level of 26 under § 2M5.1. This is because in Executive Orders like the Iraq embargo, the President determines that a particular country poses a "threat to the national security" of the country, and therefore orders an embargo. "Every court to consider the issue has held that the evasion of [such] sanctions" are "national security controls." [United States v.] Elashyi, 554 F.3d 480, 508 (5th Cir. 2008) (citing [United States v. McKeeve, 131 F.3d 1, 14 [(E. D. Pa. 1997)]; United States v. Shetterly, 971 F.2d 67, 76 (7th Cir.1992)). Put simply, "section 2M5.1(a)(1) applies to any offense that involves a shipment (or proposed shipment) that offends the embargo, whether or not the goods actually are intended for some innocent use." McKeeve, 131 F.3d 1, at 14. The proper base offense level for Hanna's sentence was 26 under § 2M5.1.8
>
> At first glance, it may seem that this error was harmless, for the district court concluded (after its calculation of the laundered funds) that the base offense level was 26. But this is far from harmless. Because the district judge instead calculated the base level under U.S.S.G. § 2S1.1(a)(2), she then went on to subsection (b)(1)—required when "subsection (a)(2) applies"—and added the additional six-level increase which prompted Hanna's current objection. However, if the district court had determined the base offense level properly through subsection (a)(1), the offense level listed in § 2M5.1 would have been Hanna's base offense level. There would be no addition of a six-level increase, because subsection (b)(1) would not apply. Thus, Hanna's proper offense level would be 26 (base offense under § 2M5.1), plus 2 (for obstruction), plus 2 (for money laundering), for a total of 30. Instead of the Guideline range of 188–235 months that the district court found, the correct range would have been 97–121 months.

United States v. Hanna, 661 F.3d 271, 293 (6th Cir. 2011).

Despite the error, the Sixth Circuit declined to remand, noting that the decision to sentence "under § 2S1.1(a)(2) was directly in response to Hanna's urging that it take that very course." Id. The appellate court observed that Hanna could not rely on this basis given "the doctrine of "invited error." Id. (citing Ford v. County of Grand Traverse, 535 F.3d 483, 490–91 (6th Cir.2008) ("Having induced the court to rely on a particular erroneous proposition of law or fact, a party in the normal case may not at a later stage of the case use the error to set aside the immediate consequences of the error."); United States v. Sharpe, 996 F.2d 125, 128–29 (6th Cir. 1993) ( "[N]ot even the plain error doctrine permits reversal on the ground that the trial court granted a defendant's request. . . ." (internal quotation omitted)).

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a [federal] court. . .claiming the right to be released. . .may move the court which imposed the sentence to vacate, set aside or correct the sentence." To prevail on his § 2255 motion, the prisoner must assert as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." Mallett v. United States, 334 F.3d 491, 496-97 (6th Cir. 2003) (quoting Weinberger v. United States, 268 F.3d 346, 351 (6th Cir. 2001)).

When an error of constitutional magnitude is alleged to be the ineffective assistance of counsel, the defendant must satisfy the standards set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

Id. at 687.

## III.  ANALYSIS

Defendant challenges Trial Counsel's performance relative to the calculation of her total offense level as ineffective. She adds that she suffered prejudice because had the Court applied the same 62% departure ratio it used to sentence her to 72 months, under the correct guidelines range, her sentence would be 36 months. (Doc. No. 148, p. 15).  The Court addresses each argument below.

### A.  Did Hanna Receive Constitutionally Deficient Legal Advice Relative to Offense Level?

In support of her motion, Hanna provides the declaration of Trial Counsel in which he states that his representation "during the sentencing phase of the trial court proceedings was ineffective for purposes of [Defendant's] right to counsel under the Sixth Amendment to the United States Constitution." (Doc. No. 148, Ex. C, ¶ 2).  He explains, "My deficient performance included my advocacy of the use of an inapplicable guidelines provision that exposed [Defendant] to a six point national security enhancement which she never should have faced." (Id. at ¶ 3). Finally, he adds that his performance "was not the result of strategy."  (Id. at ¶ 4).  The Court disagrees.

At the outset, the Court is mindful that "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchal-

lengeable. . . ." Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005). A trial attorney's strategy cannot be deemed ineffective under Strickland merely because the strategy did not prevail. See Strickland, 466 U.S. at 689 (instructing that "every effort be made to eliminate the distorting effects of hindsight"). Instead, counsel has "wide latitude. . .in making tactical decisions," and the assessment of counsel's performance is "highly deferential." Id. Under these standards, the Court declines to deem Trial Counsel's advice and performance as constitutionally deficient. The decision to forgo the Government's guidelines calculation arose out of a clear and reasonable objective--namely, to lower the guidelines calculation for Hanna beneath that advocated by the Government. Trial Counsel took a risk to get a lighter sentence–a risk he recognized throughout the sentencing proceedings.

The Court is not persuaded to the contrary by the supplemental authority–the decision in McPhearson v. United States, __ F.3d __, No. 09-6509, 2012 WL 1130445 (6th Cir. April 5, 2012), offered by Defendant in support of her motion. (See Doc. No. 152). The decision is distinguishable. In McPhearson, the defendant was convicted for possession with intent to distribute. The defendant's attorney never raised an argument at sentencing that could have reduced the guidelines calculation. Specifically, the defendant had maintained that the drugs found on him at the time of his arrest were for personal use. In assessing the relevant drug quantity relative to the offense, it is undisputed that drugs possessed for personal consumption are not included. Id. at * 5. Upon review of the attorney's performance, the appellate court was unable to discern any strategy that explained "the failure to raise the personal-use argument." Id. The

panel observed, that the record contained no support that the attorney's failure to raise the argument was tactical.

That is not the case here. The record is replete with the strategy endorsed by Trial Counsel. (See Objections to the PSR, Doc. No. 150, Ex. A; Objections to the revised PSR, Doc No. 150, Ex. B; Sentencing Memorandum, Doc. No. 150, Ex. C; Response to Government's Guideline Analysis, Doc. No. 150, Ex. D). His strategy was to obtain the lowest possible sentence for his client. To reach that end, he advocated a means by which the Court could find the amount of laundered funds was only $1.14 million, not the $9.5 million advocated by the Government. Trial Counsel further sought to convince the Court that the national security enhancement should not apply. Had this argument prevailed, Hanna would have been subjected to a guidelines range of 78 to 97 months.

Even as Trial Counsel recognized the risk, he embraced it because the strategy would yield a guidelines range below that endorsed by the Government. He did not take this risk recklessly. His strategy was not contrary to binding authority. In the absence of governing authority, he articulated logical factual and legal bases for his position. His strategy took into consideration Hanna's state of mind: the lack of evidence to show that she "knew or believed that any of the laundered funds were the proceeds of, or were intended to promote. . .an offense involving. . .national security." (Doc. No. 148, Ex. D at 56). Trial Counsel also relied on inferential support from the Sentencing Commission's treatment of another portion of the enhancement language.

During the sentencing hearing, the Court rejected Trial Counsel's contention regarding the six-level adjustment for national security. His position was that the

adjustment turned on a "factual inquiry," for which there was no evidentiary support. (See Doc. No. 158, Ex. B at 25). Further, Trial Counsel distinguished the cases relied upon by the Government in support of its position that the enhancement was categorical. Although the Court found that actual knowledge of a threat to security was not an element of a violation, (Id. at 28), the ruling merely reflects that the strategy was unsuccessful, not that it was lacking.

Nor is the Court persuaded to the contrary by Trial Counsel's declaration. The assessment of his performance is for this Court to render, and his characterization as ineffective is not persuasive. Trial Counsel states, "My deficient performance included my advocacy of the use of an inapplicable guideline provision that exposed Ms. Hanna to a six point national security enhancement which she never should have faced. The fact that Trial Counsel advocated an argument that was rejected on appeal only constitute loss, not deficiency. See United States v. Salazar, 124 F.3d 201 (6th Cir. 1997).

Lastly, the Court rejects as a basis to find Trial Counsel ineffective, his assertion that he "simply failed to recognize the existence of the approach which was authoritatively found to be correct by the Sixth Circuit." (Id. at ¶ 4). He adds that had he "done so, [he] would have pursued that approach." (Id.) Likewise, if this Court had the ability to foresee the approach endorsed by the Sixth Circuit, it would have taken that approach. The rejection of Trial Counsel's approach on appeal does not render the approach nonstrategic. The Constitution does not guarantee infallible representation. Here, Trial Counsel exercised the skill and judgment of a reasonably competent criminal defense attorney; he acted as a diligent advocate on behalf of Hanna.

### B. Can Hanna Establish Prejudice?

Even if trial counsel's performance was seriously defective, unless Hanna suffered prejudice, no Sixth Amendment violation occurred. Strickland, 466 U.S. at 691. Here, Hanna must show that absent Trial Counsel's errors, "there is a reasonable probability that. . .the result of the proceedings would have been different." Cullen, 131 S. Ct. at 1403. Hanna cannot meet this standard.

Although the Court started with the guidelines calculation, that calculation was not critical to the Court's sentencing decision. The vital factor in formulating Hanna's sentencing was punishment, a factor the Court identified as such at the hearing.

In explaining the sentence imposed on Hanna, the Court noted its obligation to impose a sentence that is sufficient, but not greater than necessary, to comply with the law. In noting that the guidelines minimum was approximately fifteen years, the Court noted that the Guidelines were merely one factor to consider. The Court agreed with the Government that Hanna committed a "very serious offense" not a mere customs violation. (Id. at 40). Further the Court found that it did "need to reflect in [the] sentence the seriousness of the offense because "we can't have you or anybody else simply avoiding the embargos or the laws of this country." (Id. at 41). The Court noted the need to protect the public from future crimes of this nature. (Id. at 42). The Court ruled out any need for vocational, educational, or correctional treatment. (Id.) The Court considered Defendant's greed and acknowledged its belief that the sentence has to be one of punishment. That was the main factor. "Of all of the factors considered here, this is a punishment for violation of these laws." (Id. at 45-6). The Court sentenced Hanna

to the custody of the Bureau of Prisons for a period of seventy-two months on each count; all counts to be served concurrently.  (Id. at 46).

Defendants have cited no case in which an attorney is found ineffective when a defendant received a sentence below the guidelines as calculated by the defendant or as correctly calculated.  To the extent that Hanna maintains her sentence was artificially inflated by the guidelines number, which was double what it should have been, the Court disagrees.  The Court imposed a sentence which was below the guidelines range unsuccessfully advocated by Trial Counsel because the Court imposed a sentence that it found sufficient, but no greater than necessary, to comply with the law.

## IV.  CONCLUSION

For the reasons discussed, the Court **DENIES** Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.

**IT IS SO ORDERED.**

                                s/Marianne O. Battani
                                MARIANNE O. BATTANI
                                UNITED STATES DISTRICT JUDGE

DATED: June 11, 2012

**CERTIFICATE OF SERVICE**

      Copies of this Opinion and Order was served upon Counsel of record via the Court's ECF Filing System.

<u>s/Bernadette M. Thebolt</u>
Case Manager
